Good morning. For the record, my name is William Stone. Good morning, Mr. Stone. Thank you. And I represent the plaintiff appellant, Mr. So, Hugh Griffin, on behalf of the defendants appellees, John C. Wong and John C. Wong, PC. Gentlemen, I think you're both familiar with the rules of the oral argument here in this court. One admonition that you may not be aware of, as of November 1st of last year, your oral argument is being electronically recorded for posterity immediately. It's no longer on tape. You can, as a matter of fact, today, if you wish, add this to your oral argument. After oral argument, go back, go online to the Supreme Court site and summon up the case and listen to the oral argument and listen to how brilliant you were and how stupid we were. Okay? I don't know whether all the attorneys in Chicago are aware of that. Do we have to consent to this? The Supreme Court didn't ask. It's there. Whether you like it or not, everything you say is there. Okay. No, that's only in the Supreme Court. They're doing the videos. Right. You may proceed, Mr. Stone. I think you can safely assume we're familiar with your briefs. Thank you very much. May it please the Court, Mr. Griffin. Incidentally, as I'm prone to add, that doesn't mean that we're disinviting you from discussing the facts. Just keep in mind that we've read it so that we don't need to be wholly re-educated to them, but simply remind them. And you're not precluded from reminding us because, for instance, this morning we have four cases and each case is its own universe. So don't simply assume that if there is a factual nuance that we're totally aware of it at the time you want to discuss it without first alerting us. Thank you, Justice. I understand. Well, since I've got such a short time, let me just quickly skip to the heart of the matter. And I believe that there are two critical issues that require this Court to remand the case to the trial court with instructions to reinstate the jury verdict in the amount of $4 million. The first reason is I believe that it is absolutely clear from the record that the trial judge, Judge Suriano, who I've got a tremendous amount of respect for, he conducted what I thought was a great trial. However, he admitted during the post-trial proceedings that he's not always correct. And if he was always correct, he would put this panel out of a job. I'm at risk of throwing a wrench into the machinery at this moment. I think no one needs to remind you that there is a cross-appeal here that is preliminary to the issues that you may reach so that it's your choice whether you want to defend the cross-appeal on rebuttal or whether you want to defend it now. But from my part, I consider the cross-appeal to be quite serious. I'll defend the cross-appeal now, then. And that's the second point that I was going to raise. The remitter error. I believe the most critical issue on the cross-appeal relates to perhaps an issue that's going to be reported for the first time in the State of Illinois. And that's whether or not an attorney may be held liable on a tort theory of malpractice for non-economic damages. There's been no precise, thorough analysis by any appellate court that I can find. Would you admit that if the answer to that is no, that this case is over? Not at all. Not at all. I mean, if the answer were that clearly the Supreme Court has spoken, as your opponent suggests, and that damages, non-pecuniary damages are not available to a plaintiff suing for malpractice, that if that's the case, then this case should have never gone to trial. It should have either gone out on summary judgment or it should have gone out on a motion or a 2619. I would agree on a hypothetical philosophical point of law if there was precedent saying that what you're saying is right. Besides the two Supreme Court cases, and I know there's a – but the point is that if we were to agree with his analysis, this case, we don't need to talk about the jury trial. That's true. And the same goes if you agree with my analysis. If we took Landau as all pervasive gospel, then all we can award, all that can be awarded would be pecuniary damages. On the other hand, if Landau seems to address only those cases where economic losses are an issue, then we might want to look further to Person, to Suppressed, and to Doe in determining what the result should be in this case. And you might want to talk about that. Justice Gordon, I'd like to talk about a case that you concurred in, and that's the Hanyu Mannis case. I don't remember if you recall that. Yes, I do. Well, in that case, you concurred with the decision. And in that case, the court held that if there is a case in which someone is – Justice Cousen's case. Yes, sir. The court held that if an attorney has reason to know that a breach of his fiduciary duty is likely to cause emotional distress for reasons other than pecuniary loss, that damages will be given as compensation for mental suffering in that case. Well, the question is to what extent does that address – first of all, it's victim in the case, because in that particular case, damages were rejected for emotional distress. Lack of evidence. Yes. But then we have to look, I think, to what Justice Hoffman said in the Doe case and what Justice Murray said in the Suppressed case. They don't appear to blanketly rule out the award of damages, non-economic damages, for emotional distress. However, I think there's a consensus in all three of those cases that such damages will not be forthcoming with the same ease that they may be forthcoming in, for example, therapist cases, doctor's cases, even automobile injuries such as involved in Ricky v. CTA, which has gone through some degree of expansion by the courts. But there has to be something more special than that before such damages would be acknowledged in a legal malpractice claim, and basically because of the floodgates problem. In other words, the floodgates problem always haunted emotional distress cases, but to the extent that the ghosts were exercised in other situations, they have not yet been exercised in legal malpractice cases. Don't take undue comfort in my use of the word yet. Well, the way we keep the floodgates from opening and to be consistent with Justice Hoffman's decision in Doe v. Roe and the decision in Homandis, I believe that the only thing this court needs to do is limit. You can limit these damages in a very simple way. You can limit it to situations where emotional distress are recoverable against an attorney who is only pursuing a case involving non-economic loss. In other words, the argument being that if you hire an attorney basically to protect your rights or to assert your rights so as not to sustain emotional distress, if he in fact fails in that and he can't otherwise be, there can be no recovery, then in that particular case there is no way of controlling that attorney through compensation and the only way would be through if his conduct reached a level of impropriety so as to be disciplined by the ARDC or by his peers. So that, in other words, if you hire somebody on a custody case, child custody case, or on an imprisonment case. Any criminal case involving the threat of incarceration. Was this incarceration? Yes, it was. It was called INS detention. Okay, but aren't there a number of cases that say that this is not incarceration? I have not seen any case that says it's not incarceration. But how could we prevent, if we rule in your favor on this case, how could we prevent it from being extended to every case where potentially to every case where it's the negligence of the attorney that leads to the incarceration of his client? I think, Justice. How do we keep the genie in the bottle? I think Justice Gordon hit it right on the head. I don't know. I always hit it right on the head when I hit your opponent. But in this case, I think it's very limited to only the situation when an attorney accepts the representation and he knows that the only reason I'm being hired is not to recover any economic damage. I'm solely here to protect a person's rights, maybe his right to freedom. Isn't that every criminal case where there's the possibility upon conviction of incarceration? Every criminal case which carries the possibility of incarceration. I would put the attorney in the situation where I'm going to have my malpractice insurance paid out because if this defendant's conviction is reversed on appeal, okay, because of my incompetent representation, he may have a cause of action against me. I mean, you're going to put every criminal lawyer in the country in a very precarious position. You certainly will attach a civil claim to any claim of Sixth Amendment ineffective assistance. Absolutely. I have tried six of them. I'm sorry. I want to ask. Is there a single case in the United States that you're aware of where an individual in custody, we'll call it incarceration, imprisonment, in custody, whatever you want to call it, but this is actually an INS detention, isn't it? This is an INS detention, but they're still put in county jails. Is there a single case that you're aware of where the individual was already in detention, already in detention, all right, and a bond was requested and the failure to grant bond resulted in a subsequent malpractice action allowing any kind of damages? The answer is I could not find it, but there's a reason why. Because when immigration attorneys commit malpractice, their client is generally put on a slow boat to China. They don't have the resources. They don't have the time. They don't have the connections. In this case, this case is here because my client has doctors, engineers, and other people that stood up, professionals, to protect him and to pay money for him, and he is in a very unique situation. But like the Second Circuit. The injuries apparently were uncontradicted in terms of your expert as far as the emotional distress. That didn't seem to be contradicted at trial. However, at the time that he was detained, the lawyer requested a bond, and the judge denied that request based upon the lawyer, as I understand, for the immigration service, arguing that this individual had been convicted of what would be amount to a felony, and he had served a period of time after October 1998. October 8th, yes. 1998? Yes. Which would not permit bond. Isn't that how the judge ruled? Yes. All right. Now, your expert on this other issue about immigration law did not practice in the area of setting bond or the other. What was the other hearing? Actually, he had never had a 238 proceeding. He didn't have any removal experience, and he didn't have any experience in any kind of bond hearing. Actually, he did. He had handled five to ten removal proceedings in the prior five years, plus he taught the classes at John Marshall. Removal for what kind of individuals? Removal proceedings under Section 240 of the Immigration Code. Was it for individuals who were allegedly convicted of felonies or not? He's had one or two of those. One or two? All right. Now, your other expert, this expert, then, testified that the judge would have granted bond had the judge been made aware of all these other things. Correct. That's correct. Where does that come from? Where could the opinion actually, how could that be based on anything? I'm not aware of any expert that could actually say the judge would have granted bond. You hit a perfect point here. When I started this case, my first thing I asked Judge Siriano to do, I said, Judge, you served in bond court. You know whether or not a judge is going to grant bond. I need a determination of whether he would have gotten bond here. And I asked the judge, in this case, would you, Judge Siriano, would you cut this proximate causation notion in half? And I want you, Judge Siriano, to tell me. After you hear the evidence, would you have granted bond? And if you would have granted bond, then let the jury go and deliberate as to what the damages are. And he said, well, no, I really don't want to do that. And we have to get to that agreement. And I'm going to hold you to that agreement. I'm talking about the judge in the immigration proceedings. Yes. It was his finding that because a felony conviction had been entered against your client and because he had served an amount of time that was 365 days, that in his opinion, his judicial opinion, he was not eligible for bond. And the defendant or plaintiff in this action was not able to secure release at any time until 15 months later when an appellate court, I believe in Indiana, reversed his conviction. State trial court. The trial court, yes. So the judge ordered that he could not release him on bond based upon the facts presented to him. What facts could have changed when the immigration lawyer was arguing that this person wasn't eligible so that the judge could have? Well, the judge in the very record, in the record himself, I can't cite it because I don't have perfect memory, but it was Judge Zerbe. And as an officer of the court, I represent to you that this is the truth as I recall it. Judge Zerbe said during the transcript of the proceedings that I have authority to grant bond here and I will conduct a bond hearing.  So why are you raising the Code of Federal Regulations, the admissibility of the Code of Federal Regulations that do permit bond to issue to have been inadmissible in a post-trial proceeding based upon a theory of judicial notice? For the reason that if it was a medical malpractice case and there was a question as to whether a doctor committed malpractice, you bring in expert witnesses and the jury has an opportunity to listen to them, to judge their credibility, and I have an opportunity to rebut and cross-examine it. And it would be absurd to think of in a post-trial motion bringing in a textbook on medicine and showing the judge something that I never had an opportunity to cross-examine. I don't want this to digress too far, but aren't you forgetting about, and I don't know that anybody really raised, the Civil Practice Act itself, which addresses this problem and which changes the law from what it was originally permitting a judge to use any source of knowledge that he has available to him to determine the law, including recruiting the lawyers, so that this isn't really a matter of presenting foreign evidence. It's a matter of presenting the law. If it is foreign evidence, then it's, again, provided for under 103, what is it, 5 of 5.8. I argued that it was foreign law. He shouldn't have taken notice of it, but more importantly, it became irrelevant because their own expert admitted that he could not be let on bond. Their own expert, I cited twice in my brief, Mary Fasciati, she said, and I almost dragged it out of her during cross-examination, but she said, yes, once the final order was entered, and they blew the appeal because when the judge denied the bond, they filed an appeal, but they didn't pay any fees accordingly. It was rejected by the clerk, and she said at that point in time. But it was without prejudice and ultimately permitted. I'm sorry? It was without, the rejection was temporary, without prejudice, and ultimately permitted. I don't suggest to you that we digress on these points. I don't think the case is going to be decided on these points. I think the big issues are what is going to be most important here. So I don't want to deflect you from your argument in that sense. Do you want to address them? You can. Well, I'd like to say just a few things here. And your briefs were quite substantial on those issues as well. With all due respect, if this court does not hold immigration attorneys responsible for their malpractice, which causes someone to be incarcerated for 25 months, and we're talking about in this case a gentleman who graduated from the most prestigious Chinese engineering school, a 33-year-old gentleman, a professional, if the court does not allow that person any recovery whatsoever, then what you've done is you've given the immigration attorneys virtual immunity from any malpractice case. And that is one of the biggest problems that our immigration lawyers are suffering from right now. I cited you to the United States District Court for the Second District, and they're saying that the immigration practice is an abomination. So you're suggesting that perhaps one way we can confine this opinion so that it doesn't get out of hand is to confine it just to the immigration proceedings? You can issue a Rule 23 opinion and do that. I mean, I don't think that this – I think it can be confined. I think it can be confined to situations in which there are no economic damages. And when you look at the floodgates, 90% of what I do is personal injury. Maybe 1% of what I do is attorney malpractice. How many attorney malpractice cases are there? There's now many. A lot more than there used to be. Well, there are now. When you and I were young men, do you remember when you first paid for your malpractice insurance? It was about $200 a year, I think. And now it's $1,000 because I still have not committed a malpractice act. But the point I'm making is there's not going to be floodgates because the statistics show that it's a small fraction of all the litigation that comes through the courts that are attorney malpractice cases. And then within that fraction, there's a smaller subset. And that smaller subset is going to be the one that this case is going to apply to. It's going to be where an attorney took representation for a non-economic loss. There's also a middle ground, which is to say that the doors are not totally sealed against the award of such damages, but there has to be something extraordinary about the events that caused those injuries. So that, for example, if in this particular case the argument could be made that you have an individual here who was incarcerated before he retained his lawyer, that when he retained his lawyer, his lawyer made some overt efforts to get him bonded, that his lawyer was retained on January 29th and was discharged on June the 7th, so he was there for only four months, and that he's claiming recovery for 25 months when it could have been cured by other lawyers, that the question of whether it was curable or not is muggy. It's not opaque. It's not translucent. It's not transparent. Let me make it shorter. No, no, no. Let me just recite my litany, and then you'll be free to address it. And then the allegation is that while you've alleged that he was convicted on a misdemeanor, I don't think you mean to stand by that allegation because the back of the indictment said it was a misdemeanor, but the front of the indictment claimed it was a Class IV felony, which it apparently was by virtue of the two-year sentence of which all but four days were suspended, that the suspension did not necessarily terminate the imprisonment, but that the imprisonment, according to various cases, are supportive of the fact that even where the sentence is suspended, it's deemed to terminate on the date that the actual entire period expires, so that you don't really have in this case a dramatic instance of infliction. Certainly it was negligent at best, and it was not intentional. It's not a dramatic case of infliction. It's not at all clear that four months would have brought on this particular state of mind, although that is an issue that I'm certainly not closing the door on in discussing whether the court was right in the remitter, but it is clear that you rejected the notion that that state of mind could have been brought out by four days because that's what was raised originally, and you said four days isn't enough. So evidently, it's not a matter of the event in this regard of the chronological duration. Chronological duration has meaning. It was curable within four months. There is some question whether the lawyer did enough, but it's not as if he did nothing. Now I'll let you talk. I've had to take copious notes because you got 12 points. I've got to respond, but just quickly. We're not going to call you on theory. Their conduct was egregious, and let me tell you why it was egregious. You can look at, there's about eight points. Are we moving away from negligence into deliberate and willful infliction? No, we're not. No, it's negligence. But you call it egregious. Justice Gordon said it's not that egregious, but we can look at the conduct, and there's one point. This is going to be one of my questions. If you've got any cases at all in Illinois where we have, is there a cause of action for just pure, simple, negligent infliction of emotional distress? Well, just forget about whether it's a lawyer or not. Well, I can say absolutely, sure. Absent any kind of intentional behavior? Absolutely. Negligence behavior that can be considered to be so negligent that it's willful and wanton? There's negligent infliction of emotional distress. What's your best case for that? Well, I don't have it off the top of my head. You're going to have a hard time finding one in Illinois, I think. The law may have changed recently, but I've had cases of negligent infliction of emotional distress. But I want to go back quickly to Justice Gordon.  And that is when these lawyers were fired, they still took a month to withdraw. They didn't immediately withdraw. They didn't show up for the hearing. That's because they weren't aware of the place. But you don't need to be there to withdraw. And you already had a new lawyer on post who chose later not to accept the case. Well, Judge Zerbe would not allow her to enter an appearance. And so the client went per se. But here's the key point, is they left them to rot in jail. No subsequent lawyer could ever come in here. The case was terminal when they created their malpractice. And the evidence for that comes from their own experts' lips. Mary Fauciati, she said it twice, that when they blew the appeal, when the 30 days had passed on appealing from Judge Zerbe's ruling, there was no way he was going to get primed. The best that was going to happen to him, even if he won his credible fear hearing, is he was going to spend the rest of his life in jail until there was no chance that going back to China would cause him to be tortured. I had pulled a lot of her, but that is the strongest fact in this case. They left him with no recourse. No subsequent lawyer could come in here. And that ties right into the failure of the remitter. Because the judge's remitter was based upon, oh, another lawyer should have got him out. That tells us this. Judge Siriano heard all the evidence because the basis of his remitter, we know, I would have given him bond. He could have came back two days later, I would have given him bond. But no lawyer ever came back to give him bond because bond was not available. None of the experts ever said that bond was available. And so this was a post-trial ambush. Absolutely. I was deprived of any opportunity. They never disclosed the CFRs and the 213s. The witnesses never discussed it in courts. I was just totally blindsided. And that, to me, is fundamentally unfair. It's procedurally improper. And the court does not have the right to take judicial notice of that when both parties have brought in experts that said immigration law is complex. It's always changing. And what does Judge Siriano admit on the record? I don't know immigration law. He admits it. God bless him. He's an honest, good man. He admits, I don't know about immigration law, I just know about state bond law. And in state court you would get any number of free hearings on bond. We need to hear from your opponent. Do you want to sum up right now? I sum up. I mean, we've got about a minute because we have to hear from Mr. Griffin. We've got other cases this morning. We really have to move along. I apologize. Don't apologize. I'm just going to quickly say this, that I believe that there is a foundation upon which this court can build. And I'm going to say this court can build on the Doe v. Roe case. This court can build on the Hanumanas case that Justice Gordon concurred in and can take it just a little step further and apply the rationale and the evidence here. And if this court does not do that, then this court is going to give attorneys, immigration attorneys, virtual immunity from any kind of malpractice. And it's going to be just as Justice Cahill said, the only relief or the only thing that's going to keep them under control is if their conduct becomes so egregious that it becomes a matter for the disciplinary commission to deal with. Thank you. Thank you, Mr. Stone. Mr. Griffin. May it please the court. Just on a factual matter, I want to clear up the claim that our expert somehow said something contrary to what Justice Soria, Judge Serrano ruled. It's just not correct. The two sites that he's talking about, one, volume 18, page 200, the discussion with our expert was after you've argued your case to Judge Zerbe, and Judge Serrano, and you continue to argue or take an appeal, and good advice in the circuit court normally too, well, you've argued your case, he's ruled. It wasn't in the context of could another attorney come in and file another bond motion. That wasn't the context of it at all. So the idea that there was evidence here contrary to the CFRs and contrary to what Judge Serrano ruled is just not right. I mean, Judge Serrano did say, you know, I don't know immigration law. But he knew the evidence. And the evidence was the plaintiff did get another bond hearing finally after the Indiana attorney went and undid the conviction, he retried, and so on and so forth, so no longer had an aggravated felony conviction. He got another bond hearing. I think the plaintiff said it was even in the same courtroom. And the judge knew the burden of proof law. He knew burden of proof law in legal malpractice. If you fire an attorney for failing to get you some relief and sue him then because he didn't, it's part of your burden to show that a subsequent attorney couldn't have come in and gotten that relief. Are you at this point ready to assert that when you hire an attorney for the sole purpose of maintaining a legal position which would do only one, perform only one function, basically to give you peace of mind, which is another way of the emotional distress? That the failure of that attorney to perform competently, whether it's negligently, I'm talking about strict liability, but negligently, goes without redress, that no tort was committed by that attorney because all that he did was fail to avert emotional distress? Is that what you're ready to assert? I would say there is no cause of action for emotional distress under the facts of this case. I want to address. No, no, no, no. I'm asking you a general question. Let's not dance away from that right now, Mr. Griffin. Please, indulge me. Attorney negligence. Indulge me. Are you maintaining a blanket rule that under no circumstance will an attorney be liable for infliction of emotional distress in a legal malpractice action? Under the definitions that our Supreme Court has given us of what a lawyer malpractice action is and what the recoverable injuries are, I would say yes, I'm saying that. But if we were here debating a case where the lawyer had wrongfully failed to defend a criminal and the criminal was wrongfully incarcerated, deprived of his liberty interest, and so on and so forth, we could have a heck of a debate. But as Justice McBride's already brought forth, this case isn't anything like that. Our client didn't cause the plaintiff to be in detention. The U.S. Supreme Court has held that detaining an alien without bond during his aggravated felony case doesn't violate any constitutional rights. It's not an unlawful deprivation of a liberty interest. The question is not whether it violates a constitutional right. The question is whether it causes emotional distress as defined in the Davis case, public finance versus Davis, which is the granddaddy of all of these cases defining what emotional distress has to be. Well, then I think you have to look at it. And can it fit regardless of what particular prohibitions are violating? Well, then we look at the conduct. As I think you mentioned in your discussions with Mr. Stone, if we're talking about intentional conduct, willful and wanton conduct, I think you made that point in the Humedatus case, that while there wasn't any real egregious conduct. Once that requirement is modified, as it was at least with respect to Rickey and with respect to the Supreme Court cases that followed thereafter, that expanded this idea of the zone of, what is it? Danger. Danger, right. So that we no longer need willful, but we look to the nature of the distress. So that if all it meant is that he had to spend a night in jail, that's one thing. But if he spends four months in jail and left without any promise of ultimate redemption, that's another. But should that be a judge? Should the judge be deciding that? Or should the jury be deciding that? Well, again, I think you have to take in the whole panoply of the societal concerns, the public policy concerns. I mean, look at the Pasquale case, which my opponent cited, which was the case where the stock race car blew up and part of it went right into the head of a lady in the stands and her spouse was sitting right next to him. And they said, you know, of course that's emotional distress. Of course you could foresee that something like that could happen. But it's a strict liability case. So we're going to look at that. We're not going to let you have her. I don't think Pasquale has any relevance to this case at all. But the idea of foreseeability. One of the interesting things that occurred here, and Mr. Stone alluded to it, was just before this case went to the jury, there was this rather arcane discussion among the lawyers about who ought to decide the issue of proximate cause, whether it was a legal question or whether it was a question, which it normally is, for the trial or the fact. It's ordinary in both, isn't it? Foreseeability is decided once by the judge and once by the jury. And, of course, what they were really aiming at was the fact that there was expert testimony by Mr. Freitag, which basically summed up this way. He said that if the immigration judge had been provided with all of the information he should have been provided with by the attorney, he would have granted a bond. Now, Mr. Stone immediately realized he had a problem there, because if you submit that question to the jury, they have to die to decide what a judge would do when he was granting a bond. So he said, oh, well, maybe we should let the judge decide this question of proximate cause. My question is, and it's based on a case that you shrewdly cite in your brief. Doe versus Roe. No, no, Aguilar. And the reason, Mr., he cited it, I suppose, because I wrote it. No, I'm only teasing you. But it wasn't an original idea with me. It was simply an idea that was in Illinois law for a long time, simply that. An expert's opinion must be based on facts and not conjecture. And my question was, was it Freitag's expert opinion that Zerbel would have granted the bond if all of these facts had been known? Was that factually based, or was it pure speculation on his part? Because who knows what Zerbel would have done. We argue and cite Aguilar for the bond. I know. The funny thing, you know what the expert opinion is? If that question is answered that it's speculative, the expert testimony was speculative, you have never really established proximate cause, have you? No. Well, unless you accept the testimony of their expert. But let me add, and the only objection you have to their expert testimony is summarized in the Northern versus Upjohn case involving doctors where it wasn't enough to have a medical degree, you actually had to have experience with that particular drug. But that goes against the trend. And I know wherever I speak because I did sign off on Upjohn with some considerable hesitancy, but I did. But that doesn't mean that I would necessarily sign off on the lack of expertise in this case where he has the general education and teaches the course. Does he have to have experience in every single facet of that discipline before his testimony is allowed? At best, it's a question of weight. I will accept. Can I accept? I won't accept that and go on, but go ahead. A pure question of law should ever be given to a jury. Now, whether or not a judge would have set bond, in my opinion, is a question of law. Now, my question to you is, should that have ever been presented to the jury to decide? In my view, it shouldn't have. But if you're talking about what the agreement was. Can a jury ever decide whether or not a judge would grant bond? Is that a question of law, first of all, how a judge will rule on a given issue? I think the only case we've got squarely on point is the Supreme Court case involving an appellate mistake. And Justice Freeman said that in the context of an appeal, that's a question of law. I don't know that we've had it clear. Well, I think, though, that when it involves foreign law, which the federal regulations probably can be categorized as being, then issues of law are really issues of fact. That's the general principle when you're dealing with conflicts law. You're allowed to bring in an expert on the law of that jurisdiction and that fits. So that in this particular case, I would venture an answer to Justice McBride that perhaps, yes. I'm not sure this is a conflict question at all. But I want to know, on the question of whether or not the plaintiff here, defendant in the immigration case, could have been granted bond, isn't it a position that the statute provides that a non-permanent resident alien convicted of a felony is not eligible to be released on bond if that incarceration on the offense occurred after October of 1998? That was the rule that was in effect at the time of this case. That was a two-year rule. If it happened today, we wouldn't be here. You can't be, an aggravated felony can't be bonded out. But there was a two-year period where they had this rule because they didn't know if they could hold them all. And they said, well, if your criminal confinement was after that date, October 8, 1998, you're stuck. But if it was before that, then you're eligible for bond. Not that you had a right to bond. Nobody has a right to bond. I mean, that's another issue in this case. You're talking about rights. Nobody has a right to be out on bond. But can I just make the point with Justice Gordon? Give him his credentials. Give him his credentials. Going back to Aguilera, I mean, there's no dispute there about the credentials of the testimony. No, I'm not quarreling with his competency as an expert testimony. The expert said to his negligence opinion was at the end, he says, I think the judge knew the law. Of course he knew the law. But you didn't tell him that you never told him that the plaintiff was not physically confined after October 8, 1998. See, that was the negligence on which the whole case is based, that the judge didn't know that. Even if he had known that, given the wide discretion that any judge has on bond, okay? Right. Because it wasn't only the legal questions about whether he might have been legally entitled to a bond. There were some subjective factors that Zerbe had to take into consideration, too. Right. Like is he a bad guy? Now, that was off the record. I know. But the point is, is that how can any expert witness ever testify to a degree of legal certainty that if Zerbe had known X, Y, and Z, he would have granted a bond? And how can you make that a jury question? I agree with you. I agree with you. And, you know, his ex-wife kept coming to these things. And as the plaintiff's own expert said, she probably blew the whistle. Of course. Of course. But that's beside the point. So you're saying it's not a jury question whether the judge could have or would have granted bond? I'm not saying anything. I'm asking these lawyers to give us some advice on what kind of opinion or order we should write. We have to write an opinion or an order. And we have to, it seems to me, initially, whatever we decide later with respect to damages or post-trial motions, we initially have to decide that question as to whether or not proximate cause was established in this case based on the expert testimony of Mr. Fired. Fired tag. If that question is answered no, this case is over. Even Mr. Stone would. You may not get there. No, he says no, but he's going to get a chance to step up again. You may say that this kind of case where there's no deprivation of a constitutional right and no lawful incarceration, a legal, honest detention isn't an economic, that's not going to be a case we're going to stretch. What about the contention that he should have done something in Indiana? How clear is it that just because it involves going back and dealing with the courts in Indiana that he is under no obligation to do that because he's not licensed to practice in Indiana? What kind of law is there about an attorney quarterbacking a defense even if it involves delegating out certain tasks to others that may be essential to ultimately vindicating the client? Would that be something that would be in play here so that if he can't go to court, he should recognize that the infrastructure of this whole incarceration is the identity of the offense and the sentence, which is localized in Indiana, that he should retain co-counsel in Indiana to deal with that? What about that? Well, I mean, if the lawyer undertook to say, I'm going to quarterback this whole case. I'll take care of everything, then you could have a point. But the testimony of Well, he was retained to get this guy bonded. Well, the testimony from the girlfriend was that he was retained to handle two or three immigration hearings. She said he never said he would do anything in Indiana. What he told me is going to Indiana and trying to get the conviction set aside would be a good thing to do, but it would take a long time. And in his judgment, it wanted to get him out in a sooner period of time. And it did. Obviously, it took 18 months when somebody undertook to do it. What he said was, I've got an idea to do something faster, which was to try to talk the INS into saying, you know what, because this thing says misdemeanor on one side and it says felony on the other, maybe we shouldn't treat it as an aggravated felony. And he got the assistant director on a meeting right before the bond hearing to say, I think you're right, you know, I think we made a mistake. So my client tells the plan, I think this bond hearing is going to be great, I think we're going to win it, walks in and finds out the trial lawyer says, I talked to the district director, he's wrong, that's not the case, we're going on the statute that your Honor has already referred to, which says any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by the court of law, regardless of any suspension or imposition or execution of that imprisonment or sentence in whole or in part. And that's what Zerbe said. I know the guy isn't physically incarcerated. He was only in four days. Everybody says that on the record. It's right on the sheet. But he says, I think, and the INS attorney argued, and Fitter ultimately agreed, and Fitter argued, the judge agreed, you know, under this, I've got to treat him as if he was still confined until the final date of his sentence, which was March 2, 1999. You want to sum up? Before you do that, I know, but there should be at least a couple of moments, not more, spent on the issue of the primary appeal here, whether the court committed error in the remitter, and whether that error could even be contested or challenged at a point where he accepted the alternative of a new trial. You want to start with that? Well, that's an interesting question. Under that new case, the name escapes me now, the new Supreme Court case, we cited that. It seems to me that under the Spencer, it starts with an S. It seems to me that under the rationale of that case, there's a real issue here as to whether you can come up on a PLA and attack a new trial order that was entered. Stevens. You can attack a new trial order. So, you know, we briefed that, and I guess you'll have to decide whether the rationale applies, in which case you never have to get to the. Well, the question is, in the Stevens case, however, he overtly took the initiative to invite the new trial and then challenged it on appeal. In this particular case, he was not the primary mover here. The court said, take the remitter or take a new trial, choose. It was a Sophie's Choice kind of situation, should the Stevens case apply to that as well. Right. I mean, but the rationale is kind of the same, and the court says, I know you might have tactical reasons for what you did. I mean, in Stevens, there was a JNOV, and the guy said, well, wait a minute, how about a new trial? Because he had rejected, what if he rejected either alternative, either the new trial or the remitter? At that point, what would have happened? Well, you can't do both. You can either accept the remitter, in which case judgment would be entered, and then the appeal would depend on whether or not the defendant's story was proper. So he had no choice. No, he could have. No, he can challenge the remitter on appeal. Well, he can still do that. And the question is, can you do it after Stevens? There were some cases indicating you could, but I think the rationale in Stevens kind of puts that in question, I would submit. So we had a lot of ground to cover. We didn't cover all of it, obviously. I'll have to stand on my brief for many of the points we didn't discuss. Well, it's the credit of the attorneys in this case that you uncovered every nook and cranny of this appeal, and there are many others. Thank you, Mr. Griffin. Mr. Stone, I guess you know what the relief is that I want, but we would ask that you remain. Thank you, Mr. Griffin. Mr. Stone, you have three brief moments to rebut. The first thing I wanted to rebut is I want to give the Court a citation to the record. There appears to be a disagreement between Mr. Griffin as to what his expert said, and Mary Fasciati said, and I'm going to quote it, and she said this at the record volume 19, 28, and record volume 23 at 15. Once a final order has been entered, there really isn't any bond available, period. Unquestionably, they left him there with no right to bond. That takes care of two matters. That takes care of the judge was wrong in assuming that bond was continually and perpetually available, and when you read that section of her testimony, it is patently clear that he was going to spend the rest of his life in jail. But that assumes, too, that Zerbe could have been disabused of that notion if he had been properly, if the argument had been properly made. Absolutely. That's one of the basis upon which we claim malpractice. I know, but one of the things that I'm, you know, and it's speculative here, but, you know, I was a trial judge for 10 years, and I did some dumb things on the bench. Even though I was properly counseled by both plaintiff and defendant on what I should do, because of my dimness, I didn't do it. How can you blame the attorney for the stupid judge? Well, unfortunately, as you know as a trial judge, our obligation to our client is to bring you the controlling law. Oh, come on. And to bring you the controlling law. Stop. I'm just going to stop. You're not God. You don't know everything. We have to bring new case law to you. We have to make arguments to you. But is it also true that on occasion no matter what you say to me because of my predisposition or my stupidity or just my plain obtuseness, I'm never going to get your point? Well, you might not be re-elected if that continues to happen. I know, but there's even a more transcendent question than that, because that issue is whether you can have any degree of certainty that had you brought the law, it would have made a difference. Yes. Well, the question doesn't call for a yes or no unless you agree with what I'm saying. I think there's a real question then in this case whether or not the jury could ever properly decide whether the judge should have or would have granted bond. The question then becomes should the trial judge in this case have answered that question for the jury, and then if it determined that proximate cause that the court should have given bond, then you could get to the jury on the damages. But there's a serious question here whether the trial judge in this case and whether you as the lawyers agreed to it or not is not the question, because it was improper for the judge not to rule about the issue of bond in the first instance. Then there's an error that the judge committed that neither of you have talked about, and it still hasn't been decided whether this issue should have ever gone to the jury in the first instance. In my opinion, it's a threshold question. And if it should have been decided by the judge first as a matter of law, then there's grounds for error. I've tried six of these, and they're always bizarre because there's cases within cases, and we're always making new laws. But just to answer your question, please let me address that. The judge did in this case. The judge on the record said he would have given bond. We know. Even though he let it go to the jury, we know by the remitter. We know by the rationale that he employed. You're saying he did say he would have given bond. You're saying he answered the question in the affirmative on the record before the jury got the case. He did.  Well, then, if that's the record. No, no, no. Not on the record. The trial attorney, Mr. Brunson, is here right now, and I'll represent you. He said, if I'm going to have to make a decision, I'm going to grant bond. And right at that point in time, Mr. Brunson, who's in the back of this courtroom, said, I want the jury. I want the jury. So when he knew the judge was already going to go to the jury. Was this included as an issues instruction? No. No. No, it was not. And the most important thing here, in my view, is that I saw this ahead of time as a potential problem. And I demanded, I wrote a pre-trial brief saying, Judge, I want you to make this decision. And what was your case that you laid out? I cited the appellate court case. The appellate court case, the Supreme Court said that it should have been cited as a matter of law. Yeah, that the trial judge should not. The jury shouldn't decide what the appellate court would do. The trial judge should decide. What was the case you relied on? Do you remember the name of it? Is it in your brief? It's in my brief. Oh, okay. Also, the most important point is that when the judge said, no, I'm going to let it go to the jury, and the defendant said they wanted it to go to the jury, and I had just already heard the judge say to me, I would grant bond. He then chose, after he knew the judge was going to grant bond, he then chose to go to the jury. And then I put it on the record. Okay, we're going to stipulate to this. The judge, you're going to be bound. You're going to raise this point on appeal. If we're going to let the jury do it, then I don't want to retry this case because I don't make any money on retrying cases. All he stipulated to, as I understand it, was that you're not going to raise an appeal on the basis that the wrong judge adjudicated that, that it should have been adjudicated by the trier of law instead of the trier of fact, but that that doesn't preclude challenging the sufficiency of the basis of the trier of fact determination. I totally agree with that. It only adjudicates the right to give it to the trier of fact. But we know it by the judge's remitter, and that is on the record, because the judge remitted it saying, well, the next lawyer could have come in there and got it on a bond, and the judge would never have done it if he didn't think that there would have been bond. So although it's not expressly there, it was off the record impliedly by his actions, we know what he would have done. Last point, then I'm going to shut up. Justice Cahill, you asked me about opening floodgates, and I want, with respect to criminal cases. Yeah. That's a concern I have. I think I've got an answer for you. Okay. In those cases involving a criminal attorney, there's an additional requirement that's going to have to be met. The person who was incarcerated is going to have to show he was innocent. Truly innocent. And he shouldn't be there. And maybe that's what, 1%? I mean, I hate to be a bigot, but how many of our criminals that are indicted are truly innocent? So that's going to be. The actual innocence requirement. Right. It's going to really narrow that malpractice area so that floodgates won't be opening on criminal lawyers. I had such a case, got a man out of jail, sued the lawyer, and settled it. Criminal lawyers also who commit malpractice should be held accountable for any non-economic losses. I thank you very much. Thank you. Very popular, Mr. Stone. Gentlemen, thank you both.